BEFORE THE THIRD DIVISION, FEBRUARY 18, 1952

**No. 56396.**—Swift & Company *v.* United States, petition 6813–R (New Orleans).

EKWALL, Judge: This is a petition for remission of additional duties filed under authority of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489), in which the importer is seeking to have said additional duties remitted on an importation of canned corned beef from Uruguay. The collector of customs assessed additional duties because of the fact that the final appraised value of the merchandise exceeded the value declared on entry.

The invoice covered two lots of canned corned beef, one lot listed at a price of $1.10 per dozen tins and the other listed at a unit price of $1.60 per dozen. The instant petition covers the lot invoiced, entered, and appraised by the local appraiser at $1.10 per dozen tins. At the time the merchandise was imported and entered for warehouse (October 24, 1941), the rate of duty on such merchandise under paragraph 706 of the Tariff Act of 1930 was 6 cents per pound, but not less than 20 per centum ad valorem, whichever was higher. The 6-cent per pound rate being higher, that rate governed. However, upon withdrawal from bonded warehouse on November 18, 1941, the rate of duty had been modified by the trade agreement with Argentina (T. D. 50504) to 3 cents per pound, but not less than 20 per centum ad valorem, as a result of which the 20 per centum rate was the higher. In view of this change in rate from a specific to an ad valorem rate, the importer attempted to amend its entry but the merchandise at that time had been appraised, which precluded amendment. The collector of customs, deeming the appraisement too low, appealed for reappraisement. The value found on final appraisement, based upon a stipulation of counsel, was $1.60 per dozen tins, less

nondutiable charges, which resulted in additional duties being assessed in liqui-dation.

It appears that the reason for the difference in value on the invoice covering the two lots was that they were purchased at different times, the lot invoiced at $1.10 having been purchased 8 months prior to exportation, while the lot invoiced at $1.60 had been purchased 15 days prior to the date of exportation.

The petitioner introduced the testimony of two witnesses. The first witness was Mr. Sidney Sutton, an employee of the petitioner, who had supervised the clearance of this importation through the customs and under whose supervision the instant entry was made. It developed during the course of his testimony that the person who made the entry had since died. The witness Sutton testified as to the attempt to amend the entry as soon as it was ascertained that duty was properly assessable upon an ad valorem basis, but the amendment was dis-allowed because the merchandise had been appraised at that time.

There were offered and received in evidence as exhibits 1, 2, and 3, two unsigned carbon copies and one original of certain letters which had been obtained from the files of the transportation department of Swift & Company in New Orleans. The witness Sutton testified that these were copies of letters and an original kept by Swift & Company in the regular course of business, setting forth the instructions received by the witness covering this particular importation and also setting forth what had been done by Mr. Maloney, who had made the entry and who had since died. Objection was made by counsel for the Government to the letters being received on the ground that they were unsigned and two were copies. The witness stated in connection with exhibit 1, the letter from the canned foods department of the petitioner to Mr. Maloney, signed "J. C. Tait JJH," that the signature thereon is that of Mr. Hill, an employee working for Mr. Tait. The witness stated that this letter was sent to Mr. Maloney from the Swift & Company office in Chicago. Further, he stated that it is the policy of Swift & Company to handle such correspondence through the sales departments interested in the particular type of merchandise, and it was upon his request that this letter was sent to Mr. Maloney of New Orleans by the sales department, in order to keep him informed. As to exhibit 3, the witness admitted that it was not signed. The letters were admitted in evidence over objection of Government counsel after testimony had been produced by the petitioner that they had been extracted from the files of the petitioner which are kept in the regular course of business. As to the failure to produce originals, the testimony showed that originals were usually sent to the Chicago office where, due to the volume of business and the size of the files of Swift & Company, correspondence is kept for only a limited time and then destroyed.

Exhibit 1, dated October 24, 1941, is directed to Mr. Maloney from the canned foods department of the petitioner in Chicago, and states that according to its understanding, effective November 15, 1941, due to the change in the rate of duty, it would be necessary to show on the South American invoice both the billing price and the current foreign market value in South America. It requests that Mr. Maloney obtain information from the local customs officer as to what they will require in the way of information on the papers (which we interpret to mean the invoice and entry) in order to establish the correct market value.

Exhibit 2, dated October 27, 1941, is addressed to the canned foods department in Chicago, and signed in typewriting "TRANSPORTATION DEPARTMENT" and is in answer to exhibit 1. It states that the "Appraisal Division at New Orleans have not as yet received advice on this reduction," but that it advised the transportation department that it believed the Swift & Company rate would be 3 cents a pound but not less than 10 per centum ad valorem. Petitioner interpreted this to mean that it would continue to pay at the specific rate, i. e., on the basis of the weight rather than at an ad valorem rate.

Exhibit 3 has no signature and will not be considered in the absence of initials indicating the writer thereof and in the absence of any evidence concerning it, with the exception of the statement that it was in the petitioner's files.

These documents have little if any evidentiary value on the issue before us, i. e., the intent of the importer in making entry at the lower value. They relate to the situation created by the change in the law at a time subsequent to entry and can have no bearing on the state of mind of the importer at the time entry was made, October 24, 1941.

The witness Sutton testified that neither he nor his subordinates concealed any information from the appraiser or other customs officials in connection with this importation nor did they deceive or misrepresent any facts, and, as stated above, the attempted amendment of the entry was refused because the merchandise had at that time been appraised.

The deputy collector of customs at the port of New Orleans testified on behalf of the petitioner that he had been in the customs service at that port for about 20 years; that he was a clerk serving under customs examiners O'Dea and Shepherd from 1933 to 1942; that he knew Mr. Maloney of Swift & Company from about 1933 until 1942. The instant merchandise, it will be remembered, was imported in 1941. He further stated that during the time he knew him, Mr. Maloney conferred with him and with the examiners prior to making entry on canned meats; that said Maloney was very prompt in complying with the regulations pertaining to importations; and that his reputation as to integrity was very high. On cross-examination, he was shown a copy of an advance report, customs Form 6445, and asked if it refreshed his memory as to whether Mr. Maloney had consulted the Government examiner before making entry of the merchandise in suit. He stated that while the document indicated that the examiner had not been consulted by Mr. Maloney, he (the witness) still maintained his original position as to such consultation and, in explanation of his attitude, stated:

In those days it was not customary to have any written form as now is prepared by the Appraiser's office when the information is sought as to values and the examiner at that time might not have been the exact one who was questioned regarding that particular importation; she might have been absent from the office when it happened.

As to this particular importation, the witness admitted that he had no definite information as to whether Mr. Maloney consulted the examiner or himself, but insisted that Mr. Maloney invariably sought information in making importations.

. The whereabouts of Miss Shepherd, the examiner, were unknown to the witness at the time of the hearing, and Mr. O'Dea died in either 1940 or 1941.

The Government contends that the petitioner was put on notice that the lower price of $1.10 which prevailed in February was not the proper price to adopt for September of the same year when the merchandise was exported. The petitioner contends that due to the fact that, at the time of entry for warehouse, duty was assessed at the specific rate of 6 cents per pound and that rate was higher than the rate computed under the alternative 20 per centum ad valorem rate provided for by paragraph 706, under which this canned corned beef was assessable, the entered or appraised value was not of great importance to either the importer or the appraiser. Such value became important later when the goods were withdrawn from warehouse and were assessable at the 20 per centum ad valorem rate. While it is the duty of the importer to inform himself as to the correctness of his representations as to the value of his merchandise, it is understandable that in entering goods which at the time of such entry were properly dutiable at a specific rather than an ad valorem rate, the same care might not be exercised as in a case which involved merchandise dutiable according to its value. Where the facts are inconsistent with an intention to conceal or mis-

represent the facts or to deceive the appraiser or to defraud the revenue of the United States, mere negligence does not justify the conclusion that such intention existed. *Linen Thread Co.* v. *United States*, 13 Ct. Cust. Appls. 395, T. D. 41322. The petition is granted.